UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INDUSOURCE, INC.,

        Plaintiff,

v.

CASE NO. 16-10056
HONORABLE GEORGE CARAM STEEH

SANDVIK TOOLING FRANCE S.A.S.,
f/k/a Safety S.A.S., SANDVIK, INC., and
SANDVIK AB,

        Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS (Doc. 17)**

In this diversity case, plaintiff Indusource, Inc. ("Indusource"), alleges breach of contract arising out of its exclusive distribution agreement in a five state territory with defendant Sandvik Tooling France S.A.S., formerly known as Safety S.A.S. ("Safety" or "Sandvik Tooling"), by which it marketed and sold Safety's tools used in industrial metal cutting. Indusource has also named as defendants parent company Sandvik AB, and another of its subsidiaries, defendant Sandvik, Inc., for breach of contract under the doctrine of piercing the corporate veil, and for tortious interference with contractual relations. Now before the court is defendant Sandvik AB and Sandvik, Inc.'s (collectively "defendants") motion to dismiss for failure to state a claim and for lack of personal jurisdiction. Defendant Sandvik Tooling has filed an Answer and has not joined in the motion to dismiss. Oral argument was heard on October 20, 2016. For the reasons set forth below, defendants' motion to dismiss shall be denied in part as to the breach of

contract claim and granted in part as to the tortious interference with contractual relations claim.

## I. Background

Because the court is deciding a motion to dismiss, the facts set forth below are those alleged in the First Amended Complaint.

### A.    The Parties

Plaintiff Indusource is a Michigan corporation with its principal place of business in Michigan. Defendant Sandvik Tooling is a French company with its principal place of business in France. Defendant Sandvik AB is a Swedish company and is a high-tech and global engineering group. Defendant Sandvik, Inc. is a Delaware corporation with its principal place of business in New Jersey. Sandvik Tooling and Sandvik Inc. are subsidiaries of Sandvik AB and are 100 percent owned and controlled by Sandvik AB. Indusource alleges that Sandvik AB operates its subsidiaries Sandvik Tooling and Sandvik, Inc. as mere instrumentalities through which it conducts its global operations. Throughout the First Amended Complaint and in its response to defendants' motion to dismiss, Indusource refers to all three defendants collectively as "Sandvik." When relying on plaintiff's nomenclature, the court shall do the same.

### B.    The Wholesale Agreement

In July, 2010, Indusource and Safety entered into a Wholesale Agreement by which Indusource would distribute, sell, and market Safety products in a five-state territory comprised of Michigan, Ohio, Indiana, Kentucky, and Tennessee. The Wholesale Agreement provides:

> Safety reserves the right to initiate new distribution in the agreed Territory. Safety shall direct any new distributor in the Territory to Indusource to purchase Safety Products. Indusource shall execute sales and marketing of Safety Products to any distributor in the Territory, including to distributors referred, recommended, or directed to Indusource by Safety. All distribution business will be directed and invoiced through Indusource as the single Safety Territory Wholesaler.

(Wholesaler Agreement, ¶ 2). After an automatic five-year extension applied because Indusource met sales targets for 2010 to 2011, the contract now runs until December 31, 2016.

### C.  Corporate Restructuring

In 2012, Safety merged with Impero and Pramet to form Impero-Pramet-Safety, known as "IPS." Around this same time Safety merged with another subsidiary of Sandvik AB, Sandvik Tooling France. In 2014, IPS merged with Dormer Tools to create Dormer-Pramet. Indusource claims that it then learned that "Sandvik" decided to sell its products covered by the Wholesale Agreement exclusively under the Dormer-Pramet brand.

### D.  Alleged Breach of the Wholesale Agreement

Indusource further alleges that many of the products sold under the Dormer-Pramet brand are identical to Safety-branded products covered by the Wholesale Agreement. As of April 1, 2015, Indusource claims that "Sandvik" had begun selling Dormer-Pramet brand products identical to Safety-branded products covered by the Wholesale Agreement. Indusource claims that "Sandvik" has distributed Dormer-Pramet products in Indusource's territory through 125 distributors, but has not directed or invoiced this business through Indusource. In their motion to dismiss, defendants claim that the Wholesale Agreement limits Indusource's rights only to products "in the current Safety literature" in July 2012, before the Dormer-Pramet line was in existence.

**E.        Defendants' Motion to Dismiss**

Defendants move to dismiss the First Amended Complaint on three grounds: (1) the court lacks personal jurisdiction over Sandvik AB; (2) defendants are not signatories of the Wholesale Agreement and therefore, cannot be liable for breach of contract; and (3) defendants are entitled to dismissal of the tortious interference with contractual relations claim as the third-party requirement is missing where the parent company directs its wholly owned subsidiary to breach a contract.  Indusource responds that (1) defendants are subject to personal jurisdiction, and are liable for breach of contract under the doctrine of piercing the corporate veil; (2) defendants also may be liable under the theory of attribution or merger; (3) alternatively, defendants qualify as a "third-parties" and may be liable for tortious interference with contractual relations.

## II. Standard of Law

**A.        Rule 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) allows the Court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  Under the Supreme Court's articulation of the Rule 12(b)(6) standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007), the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557, 570).  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must

provide "'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). Even though the complaint need not contain "detailed" factual allegations, its "'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

**B.    Personal Jurisdiction**

Defendant Sandvik AB has also moved for dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The burden is on the plaintiff to establish that personal jurisdiction exists. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Because the court is deciding the issue of personal jurisdiction without first holding an evidentiary hearing, the facts are construed in the light most favorable to the plaintiff, the nonmoving party. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (citation omitted). The plaintiff can meet this burden by "'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). Where the facts proffered by the defendant conflict with those offered by the plaintiff, the court disregards the defendant's facts for purposes of ruling on the motion. *Id.* In the face of a properly supported motion for dismissal, however, the plaintiff "may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing

that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

### III. Analysis

#### A.  Piercing the Corporate Veil

Defendant Sandvik AB argues that it must be dismissed because the court lacks personal jurisdiction over it. Sandvik, Inc. does not join in that argument. In addition, defendants argue they are entitled to dismissal of Indusource's breach of contract claim because they are not signatories on the Wholesale Agreement. Indusource responds that the doctrine of piercing the corporate veil defeats both arguments. In connection with its motion to dismiss, defendants have not relied on any affidavits. They rely solely on legal argument and a copy of Sandvik AB's certificate of registration with Bolagsverket, the Swedish Companies Registration Office showing that Sandvik AB is organized and incorporated under Swedish law.

Likewise, Indusource has submitted no affidavits in response to defendants' motion. Attached to Indusource's response brief, however, are five e-mails and two letters to support its alter-ego theory. The emails show that Safety merged with Impero and Pramet in 2012 to form IPS, and also merged with Sandvik Tooling France that same year. (Doc. 20, Ex. A, B). According to the First Amended Complaint and a supporting e-mail, in 2014, "Sandvik" merged IPS with Dormer Tools to create the Dormer-Pramet Group, which would sell products globally under the Dormer-Pramet brand. (Doc. 15 at ¶ 39, Doc. 20, Ex. A). At the same time, according to the First Amended Complaint, Safety advised Indusource to direct any question about U.S. market strategy to Dormer-Pramet's Sales President for

NAFTA. (Doc. 15 at ¶ 43). Indusource claims it learned of "Sandvik's" decision to sell its products – including the Safety products covered by the Wholesaler Agreement – exclusively under the Dormer-Pramet brand from various "Sandvik" subsidiaries. Specifically, Indusource has attached e-mails from various "Sandvik" subsidiaries, including Safety, Pramet, Dormer Tools North America, Sandvik Espanola, S.A. and Sandvik Italia S.p.A., which put it on notice of the plan to switch over to the Dormer-Pramet brand. (Doc. 20, Ex. A, C, D, E). In addition to these e-mails, Indusource relies on two letters which it asserts suggest that defendants failed to maintain corporate formalities. (*Id.* at Ex. F, G). First, Indusource relies on the termination letter, which while written on Safety letterhead, is signed by the sales director of Dormer-Pramet. (*Id.* at Ex. F). Also, the withdrawal of the premature termination came not from Sandvik Tooling, but from Sandvik, Inc. (*Id.* at Ex. G). Having summarized the proofs submitted in connection with defendants' motion to dismiss, the court turns now to the standard of law to pierce the corporate veil.

"Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547 (1995). The Michigan Supreme Court explained that the presumption that parent and subsidiary corporations are distinct entities, also called the "corporate veil," "may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that [is] contrary to some other clearly overriding public policy.'" *Id.* (quoting *Wells v. Firestone*, 421 Mich. 641, 650 (1984)). The Michigan Supreme Court has held that "[i]n determining whether the corporate entity should be disregarded and the parent company held liable on the contracts of its subsidiary because the latter served as a mere instrumentality or adjunct of the former, each case is sui

-7-

generies and must be decided in accordance with its own underlying facts." *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 243 (1947).  The Sixth Circuit has adopted the alter-ego theory of jurisdiction, which "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Carrier Corp. v. Outokumpu Ojy*, 673 F.3d 430, 450-51 (6th Cir. 2012) (internal quotation marks and citations omitted).

Michigan courts will not pierce the corporate veil unless, "(1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss." *Servo Kinetics, Inc. v. Tokyo Precision Instr. Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (citing *Foodland Distrib. v. Ali-Naimi*, 220 Mich. App. 453, 457 (1996)).  The court focuses its analysis here on the first element – whether the corporate entity was a mere instrumentality of another entity – as the allegations of the First Amended Complaint are sufficient to establish the second two elements.  *See Servo Kinetics*, 475 F.3d at 799-800.

Indusource argues this is a text-book example of where the corporate veil should be pierced due to the equities involved.  Indusource contends that Sandvik AB completely owns and controls Sandvik, Inc. and Sandvik Tooling, and is using its corporate structure to avoid its obligations to Indusource.  Specifically, Indusource claims that Sandvik AB was responsible for the decision to sell the exact same products in the territory Safety had granted exclusively to Indusource through other distributors. In essence, Indusource claims that Sandvik AB swapped a Safety label for a Dormer-Pramet label on products that were the subject of Indusource's exclusive distributorship agreement with Safety in order to avoid

the Wholesaler Agreement. Because the products were no longer labeled as Safety products, they were not covered by the Wholesaler Agreement, although in reality Indusource maintains, they were the same products, just under a different name. Accepting these allegations as true, as the court is required to do, it does indeed appear that the policy reasons supporting the doctrine of piercing the corporate veil are implicated here.

In determining whether Sandvik Tooling was the mere instrumentality of its parent corporation, Sandvik AB, this court is guided by the Sixth Circuit's holding that "[w]here the assets of the subsidiary are employed for the benefit of the controlling corporation, in a manner other than as a benefit to the controlling corporation in its capacity as a shareholder, that fact supports finding that the subsidiary was a mere instrumentality of the parent." *Servo Kinetics,* 475 F.3d at 799. Here, Indusource argues that Sandvik AB employed Sandvik Tooling's assets not in its capacity as a shareholder, but in its capacity as the manufacturer of products sold by a different subsidiary using a different brand. (Doc. 20 at 18).[1]

The parties are in agreement that this court considers numerous factors to determine whether the parent can be liable for the acts of its subsidiary, including whether: (1) all capital is provided by the parent; (2) all credit is provided by the parent; (3) the subsidiary purchases exclusively from the parent; (4) the subsidiary is undercapitalized; (5) the parent and subsidiary share officers and directors; (6) officers and directors of the parent provide gratuitous services to the subsidiary; (7) the parent handles payroll for the

---

[1] At oral argument, defendants denied that Sandvik AB is a manufacturer and stated that it acts solely as a holding company.

subsidiary; (8) the parent determines the policies and decisions of the subsidiaries; (9) the entities share a common business address; (10) the subsidiary receives no profit; (11) the parent writes off subsidiary debt; (12) the parent regards the subsidiary's business as its own project. *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 239-41 (1947). Where the parties part ways, is what degree of proof is required at this early juncture.

Indusource argues that it has satisfied several of these factors for three reasons. First, Indusource argues that it was Sandvik AB's decision to stop selling products in Michigan under the Safety brand, and that the decision to swap the Safety brand for the Dormer-Pramet brand was really Sandvik AB's "project." Second, Sandvik AB owns 100 percent of Sandvik Tooling and Sandvik, Inc. Third, Indusource argues that Sandvik AB determines the policies and decisions of Sandvik Tooling and Sandvik, Inc. though its global management and control of Sandvik Group business areas. Defendants respond that management alone is insufficient to establish alter-ego jurisdiction. In support of this defense, defendants rely on *In re Automotive Parts Antitrust Litig.*, No. 2:12-cv-00102, 2013 WL 2456610 (E.D. Mich. June 6, 2013).

True enough, the district court in that case noted the mere existence of management overlap was insufficient basis for piercing the corporate veil; but, in that case, the record was fully developed and other factors had been eliminated. Specifically, defendant's vice president submitted an affidavit stating that the subsidiaries maintained separate bank accounts, that the parent did not control the day-to-day business of its subsidiaries, that the parent did not share its financial records with its subsidiaries, that the parent corporation personnel did not hold management responsibilities with its subsidiaries, and that the parent corporation's directors had not held positions on the board of directors

of its U.S. subsidiaries. *Id.* at *1-2. Defendants have not submitted a similar affidavit here. Indusource requests limited discovery to explore the details of Sandvik Tooling's capitalization, debt, payroll, officers and directors, internal sales, or cost recovery and requests an evidentiary hearing where it could present additional evidence. While it is unclear that an evidentiary hearing would be warranted, the court finds it would be in the interests of justice to allow for limited discovery to allow the plaintiff to investigate the jurisdictional facts. *See Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991).

Defendants maintain that Indusource has not satisfied their burden because they have failed to address many of the factors required to find alter-ego liability. Defendants argue that *Singh v. Daimler AG*, 902 F. Supp. 2d 974, 982 (E.D. Mich. 2012), stands for the proposition that dismissal is warranted here as Indusource failed to address "the vast majority of factors" to be considered, a deficit that the court found was fatal in *Singh*. That case is distinguishable, however, because the matter had been pending for over a year at the time the personal jurisdiction issue was decided, competing affidavits had been filed, and defendants had even filed a motion for summary judgment, suggesting that discovery may have already closed, or at least, that significant discovery had taken place. *Id.* at 976-77. Under these circumstances, plaintiff could rightly be faulted for failing to address the myriad factors involved in the alter-ego analysis. In addition, the court hinged its opinion on the fact that plaintiff's amended complaint did not even "allege personal jurisdiction via an alter-ego theory or allege any facts that would provide a basis for the exercise of such jurisdiction." *Id.* at 982. Given the posture of this case at its infancy, with no scheduling order in place, it strikes this court as premature to fault Indusource for failing to address all of the necessary factors without the benefit of any discovery. This is especially true given

the many e-mails and letters which Indusource has submitted in its response which suggest that Sandvik AB may not have fully respected corporate formalities.

Defendants' reliance on *Midfield Concession Enter., Inc. v. Areas USA, Inc.*, No. 2:14-cv-12174, 2014 WL 4211013 (E.D. Mich. Aug. 26, 2014) also is misplaced. In that case, the court was faced with a motion to remand based on fraudulent joinder. *Id.* at *1. The lawsuit involved a breach of a non-compete agreement for the sale of food and beverage concessions at the airport. *Id.* Plaintiff sued the contract signatory and a third-party, who was not a named party on the contract, on the theory of piercing the corporate veil. *Id.* The third-party defendant was 75 percent owned by the contract signatory, but otherwise, there was no evidence to support plaintiff's claim that the third party was controlled by the contract signatory. *Id.* at * 2-3. The court determined that the third-party had been fraudulently joined because there were no specific allegations that the third-party defendant was a "mere instrumentality" of the contracting defendant, and even if it were, the circumstances of that case did not support piercing the corporate veil. *Id.* at *3.

In reaching this decision, the court found it significant that the contracting party, who was properly named as a defendant, controlled the acts of its subsidiary, not the other way around. *Id.* at *3. Simply put, the corporate parent was the proper defendant, not its subsidiary. Thus, the court explained that the contracting party could be held liable for acting through the third-party defendant, an issue which was preserved for discovery and further litigation. *Id.* By contrast, here, Indusource alleges that the parent corporation, Sandvik AB, is the controlling party, and owns 100 percent of its subsidiary, Sandvik Tooling. Given this distinction, *Midfield* does not support dismissal here.

For these reasons, the court shall deny defendants' motion to dismiss for lack of personal jurisdiction and shall enter a scheduling order providing for limited discovery pertaining solely to the alter-ego theory of liability.

**B.     Attribution or Merger**

Indusource also argues that it may establish personal jurisdiction against the parent corporation based on the conduct of its subsidiary under the theory of "attribution" or "merger." Defendants respond that neither theory is recognized by Michigan law or by decisions of the Sixth Circuit. Having found that Indusource may proceed with its alter-ego theory, the court does not address the issue of whether defendants could also be liable for breach of contract under these alternate theories.

**C.     Tortious Interference with Contractual Relations**

Although the First Amended Complaint states a claim for tortious interference with business relations, both parties have discussed the claim as one for tortious interference with contractual relations, which is a separate tort. Because there is no dispute that the Wholesale Agreement was a valid contract entered into by Indusource and Safety, the court agrees that the proper analysis is for tortious interference with contractual relations. In Michigan, the elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Health Call of Detroit v. Atrium Home & Health Care*, 268 Mich. App. 83, 90 (2005). In addition, the plaintiff must show that the defendant was a "third-party" to the contractual relationship. *Servo Kinetics,* 475 F.3d at 800.

According to the First Amended Complaint, defendants are liable for tortious interference for the following reasons:

    a.    Causing Safety to restrict Indusource's ability to purchase products covered under the Wholesaler Agreement;

    b.    Causing Safety to discontinue the sale of Safety-branded products;

    c.    Selling or causing to be sold redundant, identical products and setting up distributorships to sell those products within the Territory designated exclusively to Indusource under the terms of the Wholesaler Agreement without directing or invoicing such business through Indusource; and

    d.    Causing Safety to fail to work in good faith with Indusource to transition the Wholesaler Agreement after the merger of the Safety, Dormer, and Pramet brands.

(First Amended Complaint, ¶ 71, Doc. 15).

Defendant Sandvik AB argues that it cannot be liable for tortious interference with contractual relations because as the parent corporation, it is not deemed to be a separate actor, and cannot be liable in tort. Similarly, defendant Sandvik, Inc., another wholly owned subsidiary of Sandvik AB, argues that the same holds true for affiliated companies. Indusource responds that defendants cannot have it both ways – deny liability under the alter-ego theory on the claim they are separate entities, then claim a unity of interests insulates them from a tortious interference claim. Defendants' argument carries the day and Indusource's remedies are limited to contractual damages against Sandvik Tooling, unless Indusource can pierce the corporate veil and show that defendants should also be liable in contract.

It is enough that Sandvik AB is the parent corporation of its subsidiary Sandvik Tooling to insulate it from liability for a tortious interference with contractual relations claim, unless there is a showing that Sandvik AB acted with an improper purpose, which has not been alleged or argued here. Likewise, Sandvik, Inc. is insulated from tort liability based on its corporate affiliation with Sandvik Tooling. Strong policy reasons support refusing to

treat a parent or affiliated company as a third-party for purposes of a tortious interference claim, and limiting a plaintiff to its contractual remedies.  Contract law is based on efficiencies and does not punish the breaching party for terminating a contract that is no longer profitable.  The breaching party pays damages owing under contract law – which puts the non-breaching party in the same position had the contract not been terminated. Such a result allows market forces to work and allows the parties to pursue the most economically sound opportunities possible.

Tort law, by contrast, is not based on marketplace efficiencies, but on the breach of duties imposed by law to protect members of society from harm.  Tort damages are much broader in scope than contractual damages, and allow for punitive damages. Based on this distinction, a tortious interference with contractual relations claim requires more than a simple breach of contract, but the breach must be "unjustifiably" instigated.  *Badiee v. Brighton Area Schools*, 265 Mich. App. 343, 366 (2005).  Specifically, one "who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* at 367 (internal quotation marks and citations omitted).

The law is well settled that an agent, acting within the scope of her agency, cannot be liable for causing her principal to breach a contract, unless the agent acted for purely personal gain with no benefit to the corporation.  *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 397 (E.D. Mich. 2000).  This is true because the agent is not acting for any improper purpose, but solely in the economic interests of the principal.  Given this proper motivation, contract damages are deemed sufficient and tort remedies are

unwarranted. Similarly, when a parent company acts to protect its economic interests, by encouraging the breach of an unprofitable contract of its subsidiary, the law recognizes that this conduct is not tortious, and damages to the nonbreaching party are limited to contractual damages only. *See Servo Kinetics,* 475 F.3d at 801 (98 percent shareholder cannot be considered a third party capable of tortious interference); *Camderm Pharmacal, Ltd. v. Elder Pharmaceuticals*, 862 F.2d 597, 601 (6th Cir. 1988) (finding that parent company is privileged to interfere with its subsidiary's contracts in order to further its legitimate business interests); *Speroni S.p.A. v. Perceptron, Inc.*, 12 F. App'x 355, 360 (6th Cir. 2001) (collecting cases holding that parent company is privileged to breach a contract that is no longer in its subsidiary's economic interests); *Inland Waters Pollution Control, Inc. v. Jigawon, Inc.*, No. 05-74785, 2008 WL 205209, at *13 (E.D. Mich. Jan. 22, 2008) (holding that affiliated entities with common ownership cannot be liable for tortious interference with contractual relations). The Restatement (Second) of Torts, §§ 767, 769 (1979) also recognizes a financial interest privilege whereby a party may safely interfere with a contract as long as the party acts to protect its own interests.

In *Speroni*, the Sixth Circuit recognized that the general rule that a parent company is privileged to breach a contract that is no longer in its subsidiary's economic interests is subject to an exception "when the parent has utilized 'wrongful means' or 'acted with an improper purpose.'" 12 F. App'x at 360. Indusource has not alleged that defendants did so here. Accordingly, the general rule applies, and defendants are entitled to dismissal of the tortious interference of contractual relations claim.

## IV. Conclusion

For the reasons set forth above, defendants' motion for partial dismissal for failure to state a claim and for lack of personal jurisdiction (Doc. 17) is GRANTED in part in that Count II (tortious interference with contractual relations) is DISMISSED, and DENIED in part as to Count I (breach of contract). A scheduling order shall be entered forthwith allowing for Indusource to engage in limited discovery against defendants Sandvik AB and Sandvik, Inc. to explore whether personal jurisdiction can be established based on the doctrine of piercing the corporate veil.

Dated: October 25, 2016

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
October 25, 2016, by electronic and/or ordinary mail.

s/Barbara Radke
Deputy Clerk

---